UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INSIGHT TELESERVICES, INC.,

        Plaintiff,

v.

ZIP MAIL SERVICES, INC.,

        Defendant.

Case No. 14-11395

Hon. Patrick J. Duggan

## OPINION AND ORDER

This diversity action involves a contractual dispute between two businesses. Plaintiff Insight Teleservices, Inc. ("Plaintiff" or "Insight") is a fundraising organization that solicits donations for various charities over the telephone and receives verbal pledges of support. Insight then mails a pledge card, which is similar to an invoice, with the pledge amount and instructions on how to remit payment to those it previously solicited. To mail these pledge cards, Plaintiff used the bulk mailing services of Defendant Zip Mail Services ("Defendant" or "Zip Mail") for approximately ten years.

This previously amicable, and perhaps symbiotic, business relationship broke down in late 2013, just before the busy (and apparently lucrative) holiday season. A check Plaintiff used to pay Defendant for its mailing services was

returned due to insufficient funds, and despite replacing the check immediately, the replacement check was not deposited for two weeks.  During this two-week period, Defendant continued to collect Plaintiff's outgoing mail and even continued to invoice Plaintiff for its services.  Unbeknownst to Plaintiff, however, Defendant stopped delivering Plaintiff's outgoing mail until the replacement check cleared.  According to Plaintiff, the mail hold caused "catastrophic" consequences for its business.  This twelve-count lawsuit followed.

Two motions are presently before the Court: (1) Plaintiff's Motion for Partial Summary Judgment, which seeks summary judgment with respect to Defendant's liability only, filed pursuant to Federal Rule of Civil Procedure 56 and (2) Defendant's Cross Motion for Summary Judgment, filed pursuant to Rules 12(b)(6) and 56.  The Court held a motion hearing on December 4, 2014.  For the reasons that follow, the Court will grant summary judgment in Defendant's favor on all but Counts I and II.  The Court concludes that genuine issues of material fact preclude a finding that judgment as a matter of law in favor of either litigant is appropriate on Counts I and II.  The Court therefore denies Plaintiff's Motion on these counts, as well as Defendant's Motion on Count II.

## I.      BACKGROUND

**A.      Factual**

2

This dispute centers on events occurring in November and December of 2013. At the time the underlying events transpired, Plaintiff had used the mailing services of Defendant for approximately a decade. These services included: (1) daily pickup of pledge cards to be mailed to potential donors; (2) automated processing of the outgoing pledge cards in Defendant's facilities; and (3) drop-off of Plaintiff's processed mail to a United States postal facility within one business day. Defendant billed Plaintiff weekly for the services provided the previous week, which included the cost of postage.[1] Defendant emailed Plaintiff the invoices each week, and, according to past practice, Plaintiff typically remitted payment within seven days.

Plaintiff endeavored to pay Defendant $9,925.24 for services rendered for the week ending on November 15, 2013 by way of a check dated November 22, 2013. (Check No. 157843, Pl.'s Mot. Ex. B.) According to Plaintiff, a change in its bank's ownership (from Citizens Bank to First Merit Bank) caused a one-day delay in funds deposited into its account such that the deposit Insight typically received on Tuesdays – in this case, Tuesday, December 4, 2013 – was delayed until Wednesday, December 5, 2013. Unfortunately, the November 22, 2013 check was posted on December 4, the day before the deposit of funds needed to

---

[1] Zip Mail advanced postage to Insight. Thus, the weekly invoices Zip Mail sent to Plaintiff included the cost of postage in addition to the costs for the provision of its services.

cover the check amount.  (Bank Statement, Pl.'s Mot. Ex. C.)  Thus, the check Insight issued to Zip Mail was returned for insufficient funds (the "NSF check").

In an email dated December 9, 2013, Zip Mail's general manager Bob Muñoz informed Insight of the NSF check.  (12/9/2013 Email, Pl.'s Mot. Ex. D.) Insight indicated that it would provide a replacement check immediately, which it did the following day.[2]  (*Id.* (email from manager indicating that "[w]e will pick up the replacement check in the morning with the regular pick up"); *see also* Check No. 158456, Pl.'s Mot. Ex. E.)  The replacement check was not deposited for nine days, as reflected by a bank stamp dated December 19, 2013 on the back of the check.  The check did not post to Plaintiff's account until December 23, 2013.[3] (Bank Statement, Pl.'s Mot. Ex. F.)

Unbeknownst to Plaintiff, Defendant stopped delivering Plaintiff's mail from December 9, 2013 until the replacement check cleared.  Only after noticing an inexplicable decline in donor collections and after an email exchange with Mr.

_____

[2] At the motion hearing, defense counsel made reference to a potential dispute regarding when Defendant received the replacement check.  This was the first time the Court was apprised of any disagreement in this regard.

[3] Insight contends that this delay was caused by Zip Mail.  "[U]pon information and belief, [Defendant] failed to deposit the check immediately at a local bank, but instead sent the replacement check by mail to its national headquarters . . . .  For this reason, upon information and belief, the check failed to be posted to Insight's account until December 23, 2013, nearly two . . . weeks after such check was delivered to Zip [Mail]."  (Pl.'s Br. 3 (emphases removed).)

Muñoz on January 8, 2014, did Insight's principals learn that Zip Mail had held Insight's mail.  (1/8/14 Email, Pl.'s Mot. Ex. G ("Zip Mail held your mail because you bounced a check.  We will not release mail until a replacement check is received and that check clears.").)  Defendant does not deny holding Plaintiff's mail during this period.  (Answer ¶¶ 22, 34, ECF No. 15.)  A review of the exhibits submitted by the parties suggests that Zip Mail had a practice, at least in the past, regarding the holding of mail: in his December 9 email, Mr. Muñoz wrote: "The previous [general manager] held your mail if your check was not here on Tuesday morning."  (12/9/2013, Pl.'s Mot. Ex. D.)  At the motion hearing, defense counsel confirmed that Zip Mail had held Insight's mail on at least one previous occasion, but noted that this occurred several years before the present dispute.

Despite the hold, Zip Mail continued to pick up Insight's mail and continued to invoice Insight during this two week period, as if it was delivering the mail to the post office, which it was not.  Invoices submitted by Insight reflect that Zip Mail billed Plaintiff for services totaling $62,920.91 during the period it was holding the mail.  (Invoices, Pl.'s Mot. Ex. I.)  Upon learning of the mail hold, Insight stopped payment on two checks totaling $21,785.68.  Thus, Insight paid $41,135.23 to mail pledge cards it believed Zip Mail had processed and delivered to the post office, when the items had not been mailed at the time payment was made.

5

Defendant contends that once the funds from the replacement check were deposited in its account, it sent out all of the mail it had been holding.  While nothing in Plaintiff's brief directly challenges this contention, at the motion hearing, Plaintiff's counsel for the first time indicated that it possesses emails showing that many pledge cards were not sent out until December 31, 2013, over a week after the replacement check funds were deposited in Zip Mail's account.

**B.    Legal Proceedings**

Plaintiff instituted the present civil action in the Circuit Court for the County of Oakland on February 21, 2014.  Defendant received a copy of the summons and complaint on March 6, 2014, and, on April 4, 2014, timely removed the action to this Court, invoking this Court's diversity jurisdiction.  28 U.S.C. § 1332; (Notice of Removal, ECF No. 1.)  Plaintiff subsequently filed an Amended Complaint as of right on June 24, 2014, containing the following counts:

Count I: Breach of Contract;

Count II: Breach of Implied Contract;

Count III: Quantum Meruit and Unjust Enrichment;

Count IV: Promissory Estoppel;

Count V: Fraudulent Misrepresentation;

Count VI: Nondisclosure/Fraudulent Concealment (Silent Fraud);

Count VII: Innocent Misrepresentation;

6

Count VIII: Conversion;

Count IX: Tortious Interference with a Business Relationship;

Count X: Civil Conspiracy;

Count XI: Tortious Breach of Contract; and

Count XII: Negligence.

(ECF No. 13.)

Defendant answered Plaintiff's Amended Complaint on July 30, 2014, which triggered the need for a scheduling conference that was ultimately held on August 13, 2014. (ECF No. 15.) After the conference, the Court entered a scheduling order, which was subsequently amended by Magistrate Judge David R. Grand on December 4, 2014. (ECF Nos. 16, 39.)

On the day of the scheduling conference, Plaintiff filed its Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 17.) Plaintiff seeks summary judgment on the issue of liability with respect to eleven of twelve counts contained in its Amended Complaint, but concedes that factual disputes preclude the entry of judgment with respect to damages. Defendant responded to this motion on September 12, 2014. (ECF No. 25.) In addition to serving as a Response Brief, Defendant's filing contains a request for

cross summary judgment on several, but not all, of Plaintiff's causes of action.[4]  In

this filing, Defendant also asks the Court to impose sanctions on Plaintiff or

Plaintiff's counsel.[5]  Plaintiff filed its Reply Brief on September 26, 2014, (ECF

---

[4] Although this filing indicates that it seeks cross summary judgment, Zip
Mail alternatively seeks dismissal pursuant to Federal Rule of Civil Procedure
12(b)(6).  Having filed an answer, however, a motion pursuant to Rule 12(b)(6) is
untimely.  Post-answer motions to dismiss are properly considered motions for
judgment on the pleadings pursuant to Rule 12(c).  In any event, the Court
construes the motion as one for summary judgment, as both parties have attached
various exhibits to their moving papers.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion
under Rule 12(b)(6) or 12(c), matters outside of the pleadings are presented and
not excluded by the court, the motion must be treated as one for summary
judgment under Rule 56.").

Further, although Zip Mail contends that Insight's summary judgment
motion is premature because the discovery period has not yet closed, Zip Mail did
not file a Rule 56(d) affidavit or a motion setting forth "its need for discovery[ and]
what material facts it hopes to uncover[.]"  *Ball v. Union Carbide Corp.*, 385 F.3d
713, 720 (6th Cir. 2004) (quotation omitted).  Ironically, the prematurity
contention was raised in a cross motion for summary judgment and Zip Mail has
since filed a second summary judgment motion.  *See* note 6, *infra*.

While on the subject of rules, the Court takes this opportunity to note that
the practice of coupling a response with a motion violates Rule 5(e) of the
Electronic Filing Policies and Procedures of the Eastern District of Michigan,
which provides, in pertinent part, that "a reponse or reply to a motion must not be
combined with a counter-motion."  Violations of this rule may result in the
stricking of the offending paper.  *Id.*

[5] Defense counsel reiterated the request for sanctions at the motion hearing.
The Court, however, is not inclined to grant sanctions, primarily because
Defendant did not cite any rule or statute under which sanctions are sought.  As
federal courts have reiterated time and time again in other settings, "[i]ssues
adverted to in a perfunctory manner, unaccompanied by some effort at developed
argumentation, are deemed waived.  It is not sufficient for a party to mention a
possible argument in the most skeletal way, leaving the court . . . to put flesh on its

No. 27), however, language in this brief mischaracterizing Defendant's Response

as untimely and suggesting that it be stricken prompted Defendant to file a

Supplemental Brief pointing out the error, (ECF No. 28).  Plaintiff filed a

Corrected Reply Brief on September 29, 2014.  (ECF No. 29.)  On October 3,

2014, Plaintiff responded to Defendant's cross motion, and Defendant replied on

October 20, 2014. [6]  (ECF Nos. 30, 31.)

---

bones." *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59
F.3d 284, 293-94 (1st Cir. 1995) (citation omitted); *United States v. Dunkel*, 927
F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried
in briefs.").

     Assuming that the sanctions request is being made pursuant to Federal Rule
of Civil Procedure 11, the Rule sets forth procedural requirements that must be
followed prior to the imposition of sanctions. Fed. R. Civ. P. 11(c)(2).  One
requirement is that the "motion for sanctions" be "made separately from any other
motion[.]"  *Id.*  Another of these requirements is a two-step process set forth in the
same subdivision, known as the "safe harbor" provision.  This provision requires a
party intending to file a motion for sanctions with the court to "first, serve the Rule
11 motion on the opposing party for a designated period (at least twenty-one days);
and then file the motion with the court." *Ridder v. City of Southfield*, 109 F.3d
288, 293-94 (6th Cir. 1997).  This two-step procedure allows the opposing party
twenty-one days to withdraw the challenged paper, claim, allegation, etc., and thus
avoid Rule 11 sanctions. *Id.* at 294.  In the instant action, Defendant did not
comply with the mandatory procedures delineated in the rule, making the
imposition of sanctions wholly inappropriate.

     [6] The procedural history does not end here.  Defendant filed a second
summary judgment motion pursuant to Rule "56(c)" on November 26, 2014.  (ECF
No. 35.)  This is problematic for two reasons.  First, the Federal Rules of Civil
Procedure were amended in 2010.  As explained in the comments following the
amendment, "[s]ubdivision (a) carries forward the summary-judgment standard
expressed in former subdivision (c)[.]"  Fed. R. Civ. P. 56 advisory committee's
notes, 2010 Am.  Thus, Rule 56(c) should not be cited as the summary-judgment

## II.     GOVERNING LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court assessing the appropriateness of summary judgment asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986)).

That parties have filed cross motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute.  *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate.").  Instead, the Court must apply the familiar summary judgment standard when evaluating cross

---

rule, as "[s]ubdivision (c) is new.  It establishes a common procedure for several aspects of summary-judgment motions synthesized from similar elements developed in the cases or found in many local rules."  *Id.*  The second reason this filing is problematic is that "[a] party must obtain leave of court to file more than one motion for summary judgment."  E.D. Mich. L.R. 7.1(b)(2).  Although Zip Mail's first summary judgment motion was filed in conjunction with its Response to Plaintiff's summary judgment motion, it is undeniable that Zip Mail previously filed a Rule 56 motion.

motions.  *La Quinta Corp. v. Heartland Props., L.L.C.*, 603 F.3d 327, 335 (6th Cir. 2010) (citing *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)).  When faced with cross motions for summary judgment, each motion is examined on its own merits.  *Id.*

Lastly, because jurisdiction in this case is predicated upon diversity of citizenship, state law governs matters of substance while federal law dictates procedural matters.  *Erie v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938). Consequently, the Court is obligated to apply the substantive law in accordance with the decisions of the Michigan Supreme Court.  *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).

## III.   ANALYSIS

Insight seeks summary judgment on the issue of liability on eleven of twelve counts in its Amended Complaint, omitting Count X: Civil Conspiracy from its request.  The Court analyzes the counts sounding in contract law before proceeding to the tort claims, many of which are addressed together.

### A.   CLAIMS SOUNDING IN CONTRACT LAW

### 1.   Count I: Breach of Contract

To state a claim for breach of contract under Michigan law, a plaintiff must, as a threshold matter, establish the existence of a valid contract.  *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (citing *Pawlak v. Redox Corp.*, 182 Mich. App. 758,

765, 453 N.W.2d 304, 307 (Mich. Ct. App. 1990)).  In Michigan, the elements of a

valid contract are (1) the identities of parties competent to execute an enforceable

contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of

agreement, and (5) mutuality of obligation.  *Hess v. Cannon Twp.*, 265 Mich. App.

582, 592, 696 N.W.2d 742, 748 (Mich. Ct. App. 2005).  Once the existence of a

valid contract has been demonstrated, a plaintiff seeking to state a claim for a

breach of contract must then (1) establish the contract's terms, (2) present evidence

of a breach of those terms, and (3) show an injury causally related to that breach.

*Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999) (applying

Michigan law).  Succinctly stated, a breach of contract occurs when there is

nonperformance by a party of an obligation that is due under a contract and that

nonperformance caused an injury.  *Woody v. Tamer*, 158 Mich. App. 764, 771-73,

405 N.W.2d 213, 216-17 (Mich. Ct. App. 1987) (discussing the Second

Restatement of Contracts).

Here, the only written agreement produced by either party is labeled

"Proposal: Presort of Metered First Class Mail."  This document, which was not

provided to the Court until the motion hearing, provides that Zip Mail "offers to

pick-up, automate, presort and deliver to the USPS, all Metered First Class Mail

weighing 1-13oz from Insite [*sic*] Corporation."[7]  The document then sets forth

how the mail "will be handled[.]"  The document is signed by a representative of

both entities, each of whom signed on February 1, 2002.

Given the last minute production of the document, it is unclear whether the

parties agree that this "Proposal" is the written contract governing the parties'

relationship.  Accordingly, the Court finds that genuine issues of material fact exist

with respect to the precise terms of the contract, and that summary judgment in

Insight's favor is therefore inappropriate at this juncture.

Accordingly, the Court denies Plaintiff's Motion on Count I.[8]

## 2.    Count II: Implied-in-Fact Contract

In Count II, Insight alleges the breach of a contract implied in fact.  Insight

seeks summary judgment on this count in the alternative to Count I.  This is

because "[a] contract will be implied only if there is no express contract. . . . There

cannot be an express and implied contract covering the same subject matter at the

same time."  *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 722 (E.D.

Mich. 2005) (internal quotation marks and quotation omitted).

---

[7] At the motion hearing, Defense counsel indicated that the document was found approximately three weeks prior to the hearing.

[8] The Court notes that the analysis in the section that follows (Count II: Implied-in-Fact Contract) applies with equal force to Count I should the Court determine that the Proposal constitutes an express contract.

The essential elements of a contract implied in fact are identical to the elements required for the establishment of an express contract. *Borg-Warner Acceptance Corp. v. Dep't of State*, 169 Mich. App. 587, 590, 426 N.W.2d 717, 718 (Mich. Ct. App. 1988), *rev'd on other grounds*, 433 Mich. 16, 444 N.W.2d 786 (1989).  Thus, "[a]n implied contract must also satisfy the elements of mutual assent and consideration." *Mallory v. Detroit*, 181 Mich. App. 121, 127, 449 N.W.2d 115, 118 (Mich. Ct. App. 1989).  "The only difference is the character of the evidence necessary to establish the contract." *Borg-Warner*, 169 Mich. App. 590, 426 N.W.2d at 718 (citation omitted).  Unlike an express contract, which is typically reduced to a writing, "[a] contract implied in fact arises under circumstances which, according to the ordinary course of dealing and common understanding, . . . show a mutual intention to contract." *Pearson-Cook Co. v. Preferred Props.*, 102 Mich. App. 168, 175, 301 N.W.2d 845-46 (Mich. Ct. App. 1980) (quotation and citation omitted).  Put another way, an implied-in-fact contract will be found "where the intention" to contract "is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction." *Id.* at 175, 301 N.W.2d at 846 (quotation and citation omitted).

14

In this case, the parties appear to concede that if the "Proposal" referenced in the preceding section of this Opinion and Order is not the contract governing the dispute, then an implied-in-fact contract exists. A reasonable trier of fact could easily conclude the same. Insight paid Zip Mail for various services over a lengthy period (in excess of ten years), which permitted the parties to establish a contract through their course of dealing. As set forth in the statement of facts, this relationship entailed Insight's weekly payment for the following services from Zip Mail: (1) daily pickup of pledge cards; (2) automated processing of the outgoing pledge cards in Defendant's facilities, which included Zip Mail advancing the cost of postage; and (3) drop-off of Plaintiff's processed mail to a United States postal facility within one business day. Although Plaintiff insists that "there is . . . no dispute as to the[] contractual provisions[,]" (Pl.'s Br. 8), there appears to be some disagreement, as Zip Mail claims that, as a condition of its performance, Insight "was required to timely pay . . . within [one] week[,]" (Def.'s Resp. 2 [9]).

What is unclear, however, is whether there was any agreement or understanding, as manifested by the parties' past conduct, related to Zip Mail's right to hold Insight's mail at its facility until payment for the prior week had been received. A review of the evidence reveals that the holding of mail may have occurred in the past. Specifically, in his December 9, 2013 email, Mr. Muñoz

---

[9] This citation refers dually to Defendant's Response and cross motion.

indicated: "The previous [general manager] held your mail if your check was not here on Tuesday morning." (12/9/2013 Email, Pl.'s Mot. Ex. D.) This could illustrate a course of dealing, but the evidence is wholly insufficient on this point, as the Court is unable to conclude that Mr. Muñoz had personal knowledge of the previous general manager's practice. Further, there is no indication of whether Zip Mail was permitted to hold *all* mail it picked up from Insight, as opposed to mail equivalent in value to the week for which payment had not been remitted. Further still, the Court is unable to conclude whether Zip Mail had an obligation to inform Plaintiff that it was holding Plaintiff's mail or whether the parties' past practice gave rise to an understanding that if payment was not received, mail would not be given to the postal service. In this regard, Mr. Muñoz's email raises more questions than it answers. For instance, Mr. Muñoz did not state that Zip Mail would be holding Insight's mail due to the NSF check, and his email could be read as implying that Zip Mail had no intention of holding Insight's mail due to the NSF check. Conversely, and as previously mentioned, the email could be illustrative of the parties' prior course of dealing. These questions of material fact preclude the Court from entering judgment as a matter of law in favor of either party, particularly since a contract implied in fact requires mutual assent on all essential terms. *Mallory*, 181 Mich. App. at 127, 449 N.W.2d at 118.

These lingering factual questions are especially troubling given Zip Mail's

position, which is that when viewing the facts in the light most favorable to it as

the nonmoving party, Insight was the first party to materially breach the contract

because it gave Zip Mail a NSF check.  (Def.'s Resp. 6.)  Under this line of

reasoning, Plaintiff was in breach until the replacement check cleared its bank on

December 23, 2013, and Defendant was therefore justified in delaying its

performance until Plaintiff's breach was cured.  (*Id.* at 6-7.)  In an effort to bolster

this contention, Zip Mail notes that on November 25, 2013, just after Plaintiff

issued the NSF check but before it was deposited, Mr. Muñoz sent Insight's

principals an email warning that delayed payments would not be tolerated.  This

email provides:

> I cannot continue to advance postage of this volume and have the
> payment delayed.  Insight's original agreement was to have the check
> ready by Tuesday morning and we must get back to that schedule.  I
> have corporate breathing down my neck to discontinue any advances
> of postage (you are the only customer we advance postage to) and
> delayed payments only increase this pressure.

(11/25/13 Email, Def.'s Resp. Ex. B; *see also* Muñoz Aff., Def.'s Supp. Br., ECF

No. 26 ("I authored the email . . . informing [Plaintiff] that continued delays in

payment . . . would not be brushed aside.").)

Because Insight purportedly breached the contract first by failing to remit

timely payment, the argument goes, Insight may not sue Zip Mail for breach of

contract.  This is because "Michigan law is settled: '"He who commits the first

17

substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform."'" *Chrysler Int'l Corp. v. Cherokee Exp. CO.*, 134 F.3d 738, 742 (6th Cir. 1998) (quoting *Ehlinger v. Bodi Lake Lumber Co.*, 324 Mich. 77, 36 N.W.2d 311, 316 (1949) (quoting *Jones v. Berkey*, 181 Mich. 472, 148 NoW. 375, 378 (1914))); *Michaels v. Amway Corp.*, 206 Mich. App. 644, 650, 533 N.W.2d 703, 706-07 (Mich. Ct. App. 1994) ("The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform. However, that rule only applies when the initial breach is substantial.") (internal quotation marks and citations omitted).  Thus, the determinative factor in Michigan breach of contract cases is whether the first breach is properly considered "substantial."  *Id.*  This case is no exception.  "Under Michigan jurisprudence, whether there has been a substantial performance of a contract or, to the contrary, a material breach, is a question of fact for the trier of fact."  *In re Am. Cas. Co.*, 851 F.2d 794, 798 (6th Cir. 1988) (citing *Pratt v. Van Rensselaer*, 235 Mich. 633, 209 N.W. 807 (1926)).

Overlooking the law stating that the substantiality or materiality of a party's breach is a question of fact for the trier of fact, *id.*, Plaintiff argues that Zip Mail was not justified in holding the mail because delayed payments are not considered material breaches under Michigan law.  (Pl.'s Resp. 6 (citing *In re Am. Cas.*, 851

18

F.2d 794).)  This case, however, does not stand for the proposition for which it is cited.  The court in *American Casualty* dealt with a construction contract and affirmed the lower court's finding that delayed payments by the City of Detroit did not excuse the contractor's performance on the basis of impossibility of performance or duress.  *In re Am. Cas.*, 851 F.2d at 800.  Zip Mail does not raise either defense here.  The court further noted that Plaintiff contributed to the delay and that an express contractual provision governing disputes provided the proper basis for relief for the delayed payments.  *Id.*  Even if the "Proposal" turns out to be the express contract here, it does not contain a dispute clause.  As such, Insight's argument is not well-taken.

Insight also maintains that it did not materially breach its contractual obligations because Zip Mail did not treat the breach as material, evidenced by Zip Mail's continued performance (picking up the pledge cards and billing Insight) during the two-week period.  given that it continued to pick up the donor invoices and bill Insight for the services.  In other words, Zip Mail was not permitted to hold the mail because Zip Mail never informed Insight that it was considering Insight to be in material breach of the contract.  Whether Zip Mail was required to inform Insight that it was holding Insight's mail, however, is unclear.

In sum, the Court is unable to determine on the evidence before it whether Insight's NSF check constituted a material or substantial breach, and, if so, to what

19

extent this breach permitted Defendant to hold mail for which Plaintiff subsequently remitted timely payment.  Although there is some indication that the parties' course of dealing permitted mail to be held if payment was not timely made, the evidence is inconclusive, as there is no evidence that the previous general manager ever held Insight's mail, and if so, whether and when Insight was informed of the hold.  Further, there is no evidence shedding light on whether Zip Mail was permitted to hold mail exceeding the value of the NSF check.

Given the existence of multiple questions of material fact, the Court denies both parties' requests for summary judgment on Count II.

### 3.    Summary of Counts I and II

As an initial matter, although the Court is denying summary judgment on Counts I and II, should Plaintiff ultimately prevail, it may only prevail on one count or the other.  *Burton*, 373 F. Supp. 2d at 722 ("There cannot be an express and implied contract covering the same subject matter at the same time.").  This will turn on whether the parties agree that the "Proposal" is the operative contract or whether the evidence establishes that the contractual relationship arose out of the parties' past practice.  Under either count, the parties appear to agree that the issue of liability centers on the following issues: (1) whether Insight's NSF check was a substantial or material breach of the parties' contractual arrangement

and, if so, (2) whether Zip Mail had an obligation to inform Insight of the breach and its intent not to render further performance until Insight cured the breach.

## 4.   Equitable Theories Sounding in Contract

The parties have both moved for summary judgment on Plaintiff's quantum meruit count as well as Plaintiff's promissory estoppel count.  Defendant argues that because there is either an express or implied-in-fact contract covering the same subject matter between the parties, summary judgment in its favor is appropriate. Plaintiff, for its part, appears to acknowledge that it is not entitled to summary judgment on a contract claim and the equitable theories of recovery, noting that the causes of action are pleaded in the alternative.

### a.   *Count III: Quantum Meruit and Unjust Enrichment*

Insight contends that summary judgment on its unjust enrichment claim is appropriate because "[i]t is incontrovertible that Plaintiff remitted $41,135.23 to Defendant for mailing services that were not rendered at the time invoiced, and were not timely rendered if the pieces were mailed later."  (Pl.'s Br. 9.)  Due to this incontrovertible fact, Zip Mail "did not merit the $41,135.23 [it] received[.]"  (*Id.*)

Unjust enrichment is an equitable remedy, applied by courts to prevent the retention of unjust "money or benefits which in justice and equity belong to another."  *Tkachik v. Mandeville*, 487 Mich. 38, 48-49, 790 N.W.2d 260, 266 (2010) (quotation and internal citation omitted).  In Michigan, a claim of unjust

21

enrichment consists of "(1) a receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by the defendant." *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 478, 666 N.W.2d 271, 280 (2003) (citation omitted).  If both elements are shown, courts will imply a contract. *Fodale v. Waste Mgmt. of Mich., Inc.*, 271 Mich. App. 11, 36, 718 N.W.2d 827, 841 (2006).  However, "[u]nder Michigan law, a plaintiff cannot assert quasi-contractual theories if an enforceable express contract exists." *LG Scis., L.L.C. v. Mass Nutrition, Inc.*, No. 2:12-cv-14843, 2013 U.S. Dist. LEXIS 154084, at *16 (E.D. Mich. Oct. 28, 2013) (Rosen, C.J.) (citing, *inter alia*, *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 181 (6th Cir. 1996) ("Where the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for . . . unjust enrichment.")).

As the Court previously determined, even though the precise terms of the parties' contractual arrangement remain undefined, there is sufficient evidence to establish the existence of a valid, enforceable contract.  The relationship is governed either by an express contract or by an implied-in-fact contract, both of which provide a legal remedy.  This conclusion "bar[s] a claim of unjust enrichment, which seeks an equitable remedy." *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 506 (6th Cir. 1995).  Thus, it is unnecessary to address whether Plaintiff should recover under a theory of unjust enrichment

22

because any such recovery is precluded by the finding of an enforceable contract. *Gresham v. Haggard*, No. 09-13405, 2012 U.S. Dist. LEXIS 135397, at *32 (E.D. Mich. Aug. 7, 2012) (Randon, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 135396 (E.D. Mich. Sept. 21, 2012) (Edmunds, J.).

Accordingly, the Court grants summary judgment in Defendant's favor on Count III.

### b.      *Count IV: Promissory Estoppel*

The gravamen of Plaintiff's promissory estoppel count is that Defendant implicitly promised each time it picked up Plaintiff's mail that it would process and deliver said mail to the post office.  By failing to apprise Insight of the fact that it was holding its mail while concurrently picking up Insight's mail and invoicing Insight for its mail services, Zip Mail induced Insight to rely on the implicit promise to continue to deliver the mail to the post office.

In order to prevail under a promissory estoppel theory under Michigan law, a plaintiff must establish: (1) a promise; (2) that the promisor reasonably should have expected to induce action of a definite and substantial character on the part of the promisee; (3) that the promise produced an actual reliance or forbearance; and (4) that the claimed reliance or forbearance occurred under circumstances requiring an enforcement of the promise in order to avoid an injustice.  *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41, 761 N.W.2d 151, 166 (2008).

The Court declines at this time to grant summary judgment in favor of either party on Count IV.[10]

## B.    CLAIMS SOUNDING IN TORT

Insight seeks summary judgment on all of the tort claims set forth in its Amended Complaint, with the exception of its claim that Zip Mail engaged in a civil conspiracy (Count X).  Zip Mail seeks summary judgment in its favor, arguing that Michigan's economic loss doctrine precludes Insight from recovering in tort.  Plaintiff responds by contending that the economic loss doctrine is limited to contracts for the sale of goods and therefore does not apply to bar its tort claims. The parties appear to confuse the nomenclature, the relevance, and the principles undergirding the economic loss doctrine.  As such, the Court endeavors to provide some clarity.

The economic loss doctrine is a "judicially created doctrine" that prohibits a party to a contract from bringing tort claims that are factually indistinguishable from breach of contract claims.  *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 240 (6th Cir. 1994).  The doctrine's underpinning stems from the recognition that distinct boundaries exist between contract and tort remedies; "contract law and tort law are separate and distinct, and the courts should maintain that separation in the

---

[10] Should Insight prevail under either Count I or Count II, it will not be entitled to recover additional damages under a theory of promissory estoppel.

24

allowable remedies." *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 371, 532 N.W.2d 541, 544 (Mich. Ct. App. 1995).

Although Insight has pointed to case law indicating that Michigan courts have "declined to apply the economic loss doctrine where the claim emanates from a contract for services[,]" as opposed to a contract for goods, *Quest Diagnostics, Inc. v. MCI WorldCom, Inc.*, 254 Mich. App. 372, 380, 656 N.W.2d 858, 863 (Mich. Ct. App. 2002) (citation omitted), Michigan courts have not limited the principles of the doctrine to the sale of goods.  *See, e.g.*, *Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*, 454 Mich. 65, 559 N.W.2d 647 (1997) (finding that telephone service customer's negligence action based on alleged problems with the defendant's service did not allege a breach of a duty distinct from breach of contract and therefore holding that the plaintiff's tort action failed); *Huron Tool*, 209 Mich. App. at 374, 532 N.W.2d at 546 (noting that "[a]lthough the Supreme Court's discussion [in *Niebarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 486 N.W.2d 612 (1992)] was linked closely to the UCC context of the case, the doctrine is not limited to the UCC"); *Ferrett v. Gen. Motors Corp.*, 438 Mich. 235, 475 N.W.2d 243 (1991) (refusing to recognize a cause of action in tort for negligent evaluation of an employee).

The parties' confusion likely arises from the fact that the economic loss doctrine traces its origin to the non-UCC case of *Hart v. Ludwig*, 347 Mich. 559,

79 N.W.2d 895 (1956), which held that a plaintiff may not prevail on any claim for tort liability where the relationship of the parties is governed entirely by a contract between them.  In *Rinaldo's Construction*, the Michigan Supreme Court suggested that the economic loss doctrine is an extension of the principle set forth in *Hart* that a plaintiff may not maintain a tort action where the facts alleged do not give rise to a legal duty separate and distinct from the contractual obligation.  *Rinaldo's Constr.*, 454 Mich. at 83-85, 559 N.W.2d at 657-58.  The court stated, "In addition to acknowledging th[e] distinction [between contract and tort] at least as far back as *Hart*, the distinction has more recently been applied to sales contracts under the UCC under the rubric of the 'economic loss doctrine.'"  *Id.* at 84-85, 559 N.W.2d at 658.  Thus, although Insight insists that the economic loss doctrine is inapplicable in this action involving a service contract, the Court need not make such a determination.  As aptly explained in *Convergent Group Corp. v. County of Kent*, 266 F. Supp. 2d 647 (W.D. Mich. 2003), whether the economic loss doctrine applies is irrelevant "because [Plaintiff's] fraud claim is based solely upon [Zip Mail's] contractual duties and, therefore, is subject to dismissal under [the] *Hart* rule."  *Id.* at 660 (citing *Heidtman Steel Prods., Inc. v. Compuware Corp.*, 164 F. Supp. 2d 931, 939-40 (N.D. Ohio 2001) (concluding that the plaintiff's allegations of fraud were subject to dismissal because they were based upon the same conduct

26

giving rise to the defendant's alleged breach of contract).  The Court's reasoning

for this conclusion follows.

In determining whether a party may pursue a tort action against another

party where the parties' relationship is governed by a contract, the Michigan

Supreme Court in *Niebarger* focused on whether the duty allegedly breached arises

from tort or contract:

> The purpose of a tort duty of care is to protect society's interest in
> freedom from harm, i.e., the duty arises from policy considerations
> formed without reference to any agreement between the parties.  A
> contractual duty, by comparison, arises from society's interest in the
> performance of promises.  Generally speaking, tort principles, such as
> negligence, are better suited for resolving claims involving
> unanticipated physical injury, particularly those arising out of an
> accident.  Contract principles, on the other hand, are generally more
> appropriate for determining claims for consequential damage that the
> parties have, or could have, addressed in their agreement.

*Niebarger*, 439 Mich. at 521, 486 N.W.2d at 615 (quotation omitted).  In other

words, "the threshold inquiry is whether the plaintiff alleges a violation of a legal

duty separate and distinct from the contractual obligation."  *Rinaldo's*, 454 Mich.

at 84, 550 N.W.2d at 658.

Reviewing the arguments set forth in Insight's papers, it is clear to this Court

that many of the tort claims, and the remedies sought, are indistinguishable from

Insight's breach of contract claims.[11]  Viewing the claims through the lens of

---

[11] For example, Insight's fraud claims (Counts V-VII) allege economic
injury based upon Zip Mail's failure to comply with its contractual obligations.

27

*Niebarger*'s teaching regarding the purposes of contract and tort law, it is evident that Insight's claims are situated within the realm of contract law, which, it bears repeating, serves to protect the societal "interest in the performance of promises." *Niebarger*, 439 Mich. at 521, 486 N.W.2d at 615.  In the context of the present action, the only legal duty Zip Mail owed to Insight arose from the contractual relationship.  Insight has not persuasively argued otherwise.  Moreover, contract principles adequate to remedy any damages Insight may have sustained.

Accordingly, the Court grants summary judgment in favor of Zip Mail on the following causes of action: Count V: Fraudulent Misrepresentation; Count VI: Nondisclosure/Fraudulent Concealment (Silent Fraud); Count VII: Innocent Misrepresentation; Count XII: Negligence; and Count IX: Tortious Interference with a Business Relationship.  The Court addresses the remaining tort claims –

---

Specifically, Insight argues that Zip Mail made false (or innocent) representations of material fact regarding the performance of its contractual obligations, including representations concerning the delivery of Insight's mail and the amount due for that work.  Simply stated, Insight asserts that it paid for services it did not receive in a timely fashion.  This claim is based entirely upon contractual obligations and expectations, not upon accident or personal injury.  *See Convergent Group Corp. v. County of Kent*, 266 F. Supp. 2d 647, 660 (W.D. Mich. 2003) ("[T]he fraud claim would be barred because it simply alleges economic injury based upon Convergent's failure to comply with its contractual obligations."); *CSX Transp., Inc. v. Meserole St. Recycling*, 618 F. Supp. 2d 753, 774 (W.D. Mich. 2009) ("The carriers' fraud claims are barred by the economic loss rule because those claims, and the remedies sought, are indistinguishable from their breach of contract claims.") (citation omitted).

Count VIII: Conversion; Count X: Civil Conspiracy; and Count XI: Tortious

Breach of Contract – separately below.

**1.     Count VIII: Conversion**

Plaintiff contends that it is entitled to summary judgment on its statutory

conversion claim. Michigan Compiled Laws § 600.2919a governs statutory

conversion claims and provides, in pertinent part, that "[a] person damaged as a

result of . . . [a]nother person's stealing or embezzling property or converting

property to the other person's own use[]" "may recover 3 times the amount of

actual damages sustained, plus costs and reasonable attorney fees[.]"

"[C]onversion is any distinct act of dominion wrongfully exerted over another

person's personal property." *Pamar Enters., Inc. v. Huntington Banks*, 228 Mich.

App. 727, 734, 580 N.W.2d 11, 15 (Mich. Ct. App. 1998) (citing *Trail Clinic, P.C.*

*v. Bloch*, 114 Mich. App. 700, 705, 319 N.W.2d 638, 640 (Mich. Ct. App. 1982)).

Defendant argues that Plaintiff's conversion claim is barred by authority

standing for the proposition that a conversion claim may not be maintained "where

the property right alleged to have been converted arises entirely from the

[plaintiff's] contractual rights." *Llewellyn-Jones v. Metro Prop. Group, L.L.C.*, __

F. Supp. 2d __, 88 Fed. R. Serv. 1096, 2014 U.S. Dist. LEXIS 75130, at *57-58

(E.D. Mich. May 27, 2014) (Lawson, J.) (quoting *James T. Scatuorchio Racing*

*Stable, L.L.C. v. Walmac Stud Mgmt., L.L.C.*, 941 F. Supp. 2d 807, 827 (E.D. Ky.

29

2013) (citations omitted)).  The Court finds Defendant's position to be the more persuasive one.

Although "conversion claim[s] and contract claims are not always incompatible[,]" "for a party's conduct to result in both a breach of contract and a tort for . . . conversion[,]" the defendant's conduct must "constitute[] a breach of a duty separate and distinct from the breach of contract."  *Id.* at *58 (internal citations omitted); *see also Hart*, 347 Mich. at 562, 79 N.W.2d at 896-97.  Here, the alleged conversion (Zip Mail's temporary holding of Insight's mail) arose from Zip Mail's contractual right to compensation.  Whether the contract in fact permitted Zip Mail to hold Insight's mail does not transform the conduct into conversion, as there is no genuine dispute as to whether Zip Mail mailed the items once it received payment from Insight.[12]  In other words, had there been no agreement between the parties regarding the mail, Defendant would not have been under a legal duty to place the items in the mail in a timely fashion.  Further, Defendant's possession of the property was initially with Plaintiff's permission, Plaintiff did not make a demand for the items it gave to Defendant, nor did Defendant use the mail for its own purpose.

---

[12] Although Plaintiff's counsel suggested that the conversion claim was brought because Zip Mail still might be holding some of Insight's mail from approximately one year ago, this suggestion was made for the first time at the motion hearing.

For these reasons, the Court grants summary judgment in favor of Zip Mail on Insight's statutory conversion claim.

**2.      Count X: Civil Conspiracy**

It is axiomatic that a "[c]ivil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Temborius v. Slatkin*, 157 Mich. App. 587, 600, 403 N.W.2d 821, 827-28 (Mich. Ct. App. 1986). Further, a civil conspiracy must be based on an underlying actionable tort. *Advocacy Org. for Patients & Providers v. Auto Club Ass'n* , 257 Mich. App. 365, 384, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003).  The Court *sua sponte* grants summary judgment in favor of Zip Mail for two reasons.[13]

First, Insight's civil conspiracy count is barred by the "intracorporate conspiracy doctrine."  This doctrine provides:

> It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy.  A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.

*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)).  Here, there is only one entity – Zip Mail – charged

---

[13] As noted elsewhere in this Opinion and Order, Insight has not moved for summary judgment on its civil conspiracy count.

with conspiracy, and Zip Mail – like other business organizations – is not capable of conspiring with itself.  Second, there is no underlying actionable tort to sustain the civil conspiracy count.

Accordingly, judgment as a matter of law in Zip Mail's favor is proper on Count X.

### 3.    Count XI: Tortious Breach of Contract

According to Plaintiff, Defendant is liable for tortious breach of contract or "misfeasance[,]" which occurs "where, as here, [a] party contracts for services and is led to believe the services have been performed when, in fact, they have not." (Pl.'s Br. 19.)  Despite the ingenuity on the part of counsel to circumvent the *Hart* separate-and-distinct-legal-duty rule, the cases Plaintiff relies on are simply inapposite, as each involved a personal injury resulting from the negligent performance of a contract.

As the primary case on which Insight relies clearly indicates, Michigan law distinguishes between misfeasance and nonfeasance in the performance of a contract: misfeasance, which is defined as "negligence during performance of a contract[,]" may give rise to tort liability if a person not party to the contract is injured as the result of that negligence, whereas "failure to perform a contract altogether constitutes nonfeasance and gives rise only to a suit for breach of

contract." *Courtright v. Design Irrigation, Inc.*, 210 Mich. App. 528, 530, 534 N.W.2d 181, 182 (Mich. Ct. App. 1995) (citations and quotations omitted).

In *Courtright*, a woman sustained an ankle injury while attempting to shut off a broken valve of a sprinkler system near her condominium. *Id.* at 529, 534 N.W.2d at 181. The condominium complex owner and manager, both named defendants, contracted with a third defendant, Design Irrigation, Inc., to drain and winterize the sprinkler system at the complex. *Id.* at 529, 534 N.W.2d at 182. Design Irrigation thus formed a contract with the other two defendants to perform this work, which was "deemed necessary for the protection of the tenants and their property." *Id.* at 531, 534 N.W.2d at 182. Design Irrigation failed to completely drain the pipes and also failed to inform the condominium owner and manager of its failure to do so. Once the temperature fell below freezing, the water remaining in the pipes expanded, causing a pipe to burst. Plaintiff was injured when she slipped and fell while attempting to wade through the water.

The *Courtright* Court framed the issue as "whether the evidence presented by plaintiff[] created a triable issue of fact regarding Design Irrigation's liability in tort for plaintiff's injuries, especially where the alleged breach of duty may be characterized as a breach of contract with [the complex manager]." *Id.* at 530, 534 N.W.2d at 182. After noting that a party performing a contract "owes a separate, general duty to perform with due care so as not to injure another[ and that a

33

b]reach of this duty may give rise to tort liability[,]" the court explained that when a contractually-bound entity hides its failure to perform while simultaneously inducing reliance by other parties, an action in tort is available. *Id.* at 531-32, 534 N.W.2d at 182-83.

In an effort to shoehorn the facts presently before the Court into the *Courtright* scenario, Insight contends that it "could not discern from Zip [Mail's] conduct [that] the contractual work was not completed." (Pl.'s Br. 21.) What Insight fails to recognize, however, is that Zip Mail's failure to perform does not constitute a breach of the "duty to act with due care[, which] encompasses the duty to prevent injury from a peril created during performance." *Courtright*, 210 Mich. App. at 530, 534 N.W.2d at 182. A reading of the section of the Second Restatement of Torts relied upon by the *Courtright* Court illustrates the inapplicability of the misfeasance principle in this case, as it refers to "liability to the third person for physical harm resulting from the his failure to exercise reasonable[.]" *Id.* at 531, 534 N.W.2d at 182 (citing Restatement (Second) of Torts § 324A). Indeed, it appears that Insight ignores the language from *Courtright* indicating that the "failure to perform a contract altogether constitutes nonfeasance[,]" not misfeasance, which "gives rise only to a suit for breach of contract." *Id.* at 530, 534 N.W.2d at 182.

34

Here, Zip Mail agreed to provide Insight with services under a contract. Zip Mail may have failed to fully perform according to the terms of its promise (contingent on whether the trier of fact ultimately finds that the holding of Insight's mail was not justified), but "there is no allegation that this conduct . . . constitutes tortious activity in that it caused physical harm to persons or tangible property[.]" *Rinaldo's Constr.*, 454 Mich. at 85, 559 N.W.2d at 658. "[R]egardless of the variety of names [Insight gives the] claim, [Insight is] basically complaining of inadequate service[.]" *Id.* (quotation omitted). Thus, under the principles outlined at the beginning of the portion of this Opinion and Order addressing Insight's tort claims, Insight has no cognizable cause of action in tort.[14]

## IV.   CONCLUSION AND ORDER

The Court finds it necessary to correct one final apprehension before concluding. The parties at the motion hearing continually referred to a jury trial, but no jury request was ever made. As Magistrate Judge Grand's most recent scheduling order confirms, should the case proceed to trial, the case will be tried by the bench. (ECF No. 39 ("Bench trial is scheduled for the months of May/June 2015." (emphasis removed)).)

---

[14] For another case exhaustively analyzing the distinction between nonfeasance and misfeasance as well as Michigan cases on the subject, see *Old Republic National Title Insurance Co. v. Escrow Title Services, Inc.*, No. 1:08-cv-796, 2010 WL 2650435 (W.D. Mich. June 30, 2010) (Maloney, C.J.).

In conclusion, and for the reasons stated herein, the Court finds that genuine issues of material fact preclude the entry of summary judgment in favor of either party on Insight's breach of contract and implied-in-fact contract counts (Counts I and II) as well as Insight's claimed entitlement to recover under a theory of promissory estoppel (Count III).  The Court further concludes that Zip Mail is entitled to summary judgment on Counts IV – XI.

Accordingly, Plaintiff's Motion for Partial Summary Judgment is **DENIED** and Defendant's Cross Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  The Court denies Defendant's Motion with respect to Counts II and III, as well as with regard to Defendant's request for sanctions, *see* note 5, *supra*, but otherwise grants the motion.  As the Court indicated at the motion hearing, should this case proceed to trial, Plaintiff will be permitted to introduce evidence relating to Defendant's failure to notify Plaintiff of the mail hold.

**IT IS SO ORDERED**.

Dated: December 11, 2014

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

**Jay A. Abramson, Esq.**
**Alan J. Taylor, Esq.**